CAREY *v.* WATKINS.

Opinion delivered January 2, 1911.

1. CONTRACTS—TEST OF LEGALITY.—Where one's right to recover depends upon a transaction which is *malum in se* or prohibited by legislative enactment, and that transaction must necessarily be proved to make out his case, there can be no recovery. (Page 155.)

2. GAMBLING CONTRACTS—RIGHT OF RECOVERY.—Kirby's Digest, § 3687, authorizing any person who has lost money or property at any game

or gambling device, or any bet or wager, to recover the same, does not authorize one who has for value sold an article or thing to be raffled off to recover it, as he cannot be said to have lost his property when he receives value for it. (Page 156.)

Appeal from Poinsett Circuit Court; *Charles Coffin,* Judge on Exchange of Circuits; affirmed.

*L. C. Going,* for appellant.

The owner of property who disposes of it in a gambling transaction may recover it if he brings suit within the time required by law. Kirby's Dig., § 3687. See also 47 Ark. 378, 384, 387.

*J. J. Mardis,* for appellee.

This case differs from *Martin* v. *Hodge* in this, that while in that case the taking was wrongful, in this case there was no wrongful taking. The proof is clear that appellee's son won the wagon, and that appellant delivered it to appellee voluntarily. Appellant's cause of action arises from a transgression of the positive law of the State, and he can obtain no relief. 47 Ark. 383, 384.

HART, J. This is a suit in replevin for the possession of a wagon, and was commenced before a justice of the peace by L. D. Turman against T. J. Watkins. The latter filed a cross bond, and retained the possession of the wagon. Subsequently Robert Carey filed an interplea, claiming title to the wagon, and T. J. Watkins as next friend of Mathew Watkins, a minor, was made defendant.

The trial resulted in a verdict and judgment for the defendant.

The plaintiff, Turman, and the intervener, Carey, both appealed to the circuit court, where the case was tried *de novo.* The facts, so far as material to the issues involved, are substantially as follows:

Robert Carey owned a wagon, and raffled it off for $45, intending for the winner to have it. The chances were sold at 50 cts. each, and all the money was collected by Carey except three or four dollars. On the day fixed for the raffle, the holders of chances met at the residence of Carey at his request. A wheel or board had been prepared, which was divided into spaces

running from center to circumference. The spaces were num-
bered, and the wheel was revolved and a shot fired into it. It
was understood that the holder of a chance whose name or
number occupied the space where the bullet lodged should be
the winner. There were no particular persons appointed as
judges, but most of those present declared that Mathew Wat-
kins won the wagon. Turman claims that he won it, and Carey
says he thought so, too. At any rate, most of those present
declared that Mathew Watkins was the winner, and because
of this his father went to Carey's house and carried the wagon
away. Carey was present, and made no objections. He knew
that Watkins took it because his son had won it at the raffle.
After the case had been appealed to the circuit court, Turman
and Carey pooled their issues.

The case was tried before a jury, and the verdict was again
for the defendant. The intervener, Carey, alone has appealed
to this court. He relies upon the case of *Martin* v. *Hodge, 47*
Ark. 378, to reverse the judgment. The facts in the two cases
are essentially different. Hodge was not declared the winner, and
never claimed to be the winner. Before the result of the drawing
had been announced by the judges, Hodge took possession of the
horses and rode away. No permission, express or implied, to
take the horses was given him by the owner. The court held
that the parties under such circumstances were in the same at-
titude as if no drawing had taken place. Here the wagon was
taken after the result of the lottery had been announced, and
after more of those present had declared Mathew Wat-
kins to be the winner. The wagon was taken in the
presence of Carey, and the jury might have found from the
circumstances attending the taking that Watkins had at least
implied permission from Carey to take the wagon.

"The test to determine whether a plaintiff is entitled to
recover in an action like this or not is his ability to establish
his case without any aid from an illegal transaction. If his
claim or right to recover depends on a transaction which is
*malum in se* or prohibited by legislative enactment, and that
transaction must necessarily be proved to make out his case,
there can be no recovery." *Martin* v. *Hodge, supra.*

As above stated, there was evidence from which the jury

might have found that Watkins took the wagon by the implied permission of Carey. If so, it is evident that Carey, having voluntarily parted with the possession of the wagon, could not establish title to it independent of the lottery transaction, and, a lottery being prohibited by law, Carey had no right to recover.

In such case, the illegal contract having been executed, the law leaves the parties where they placed themselves, and affords no relief to either.

Carey also seeks to recover under section 3687 of Kirby's Digest on the theory that he lost his wagon at a game or gambling device. But a person can not be said to have lost his property when he receives its value in exchange for its possession. Carey received the value he placed upon his wagon, and did not risk anything on the lottery.

Judgment will be affirmed.