The Honorable Armil O. Curran State Representative 210 West Main Street Clarksville, Arkansas 72830-3019
Dear Representative Curran:
This is in response to your request for an opinion on the following two questions:
 If a law enforcement agency takes possession of property from a pawnbroker which is suspected or alleged to be stolen property and returns it to an alleged owner, does the taking of property violate the property rights of the pawnbroker under the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution?
 Are any of [A.C.A. §§ 12-12-103, 18-27-202, or 18-27-204] in violation of the property rights of a pawnbroker under the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution?
With respect to the Fourth Amendment, the answer to your first question will depend upon all of the facts and circumstances surrounding a particular seizure. As I indicated in response to the first question set forth in Op. Att'y Gen. 94-079 (copy enclosed), I am aware of no legal difference between the authority of law enforcement officers to seize property from a pawnbroker and their authority to seize property from other persons; pawnbrokers are no less protected by theFourth Amendment's prohibition on unreasonable seizures than are other persons. Thus, when assessing the validity under the Fourth
Amendment of a police seizure from a pawnbroker, one must consider the same factors that are relevant in the assessment of any seizure, including, but not necessarily limited to, the character of the property seized (see A.R.Cr.P. Rule 10.2); whether a valid consent to the seizure has been obtained (see A.R.Cr.P. Rules 11.1-11.5); whether a seizure is proper as being incidental to an arrest (see A.R.Cr.P. Rules 12.1-12.6); whether a warrant has been obtained and, if so, whether all requisites to the validity of the warrant have been satisfied (see
A.R.Cr.P. 13.1-13.6); whether the seizure may be justified as taking place in an emergency context (see A.R.Cr.P. 14.3); and whether the seizure is a valid seizure independent of a search (see A.R.Cr.P. 14.4).[1] Factors set forth in applicable case law must, of course, also be considered in each particular case.[2]
Because the facts of each seizure will be substantially determinative of a Fourth Amendment challenge to such seizure, it is impossible for me to provide an opinion addressing in general the validity under theFourth Amendment of all seizures that might meet the description set forth in your first question.
In my opinion, however, there is a serious constitutional question whether a seizure of property purchased by a pawnbroker in good faith that is not preceded by an adversarial judicial proceeding, not prompted by the existence of an extraordinary governmental interest, and for the purpose of returning the property to its "true owner" amounts to a deprivation of property without due process of law, in violation of theFifth and Fourteenth Amendments.[3] In the absence of precedent based upon substantially similar facts from the United States Supreme Court or the United States Court of Appeals for the Eighth Circuit, I am unable to render a conclusive opinion on the question. I will attempt below, however, to summarize the existing applicable law in order to demonstrate that a serious constitutional question exists.
Under Arkansas law, an innocent purchaser from a thief generally acquires no title as against the rightful owner of the property. Eureka SpringsSales Co. v. Ward, 226 Ark. 424, 290 S.W.2d 434 (1956). Such a purchaser does, however, acquire a right of possession of the property, and is treated as having title, as against everyone except the rightful owner.Id. See also Hinkle v. Perry, 296 Ark. 114, 752 S.W.2d 267 (1988) (stating that "[a]s against one with title, then, ownership rests with the holder of the actual title." (296 Ark. at 119; emphasis supplied));Forrest v. Benson, 150 Ark. 89, 233 S.W. 916 (1921) (remanding for a jury determination of whether the plaintiff actually was the rightful owner of the property, and thus entitled to recover the property from the defendant, an innocent purchaser without notice); McIntosh v. Hill,47 Ark. 363, 1 S.W. 680 (1886) (stating that "[t]he prima facie title must yield to the actual title when it is asserted" (47 Ark. at 366; second emphasis supplied) and necessarily implying that such prima facie title does not yield to the claim of one other than the actual owner).
Whether an interest constitutes "property" for due process purposes depends upon state law. See Drake v. Scott, 823 F.2d 239 (8th Cir. 1987), cert. denied, 484 U.S. 965 (1987). Although there appear to be no reported Arkansas decisions on whether a possessory interest is "property" for due process purposes, courts of other jurisdictions have held, and it is my opinion, that a person's possessory interest in property has sufficient attributes of "property" to be entitled to due process protection in the event of an actual or contemplated state-sponsored deprivation of such interest. GG Jewelry, Inc. v. Cityof Oakland, 989 F.2d 1093 (9th Cir. 1993) (applying California law);Wolfenbarger v. Williams, 774 F.2d 358 (10th Cir. 1985) (applying Oklahoma law), appeal after remand, 826 F.2d 930, abrogated in part onother grounds, Horton v. California, 496 U.S. 128 (1990); Newman v.Stuart, 597 So.2d 609 (Miss. 1992). It appears likely that the Supreme Court of Arkansas would agree. In Arkansas Airmotive Div. of CurreyAerial Sprayers v. Arkansas Aviation Sales, 232 Ark. 354, 335 S.W.2d 813
(1960), the court held that the plaintiff in a trover action, in order to prevail, need demonstrate only possession prior to the conversion, and not title, in the absence of the defendant's showing of a better right to the property. See also Big A Warehouse Distrib. v. Rye Auto Supply,19 Ark. App. 286, 719 S.W.2d 716 (1986). In my opinion, an interest sufficient to sustain a trover action probably is likewise deserving of due process protection. Again, under Arkansas law, bare possession of personal property carries with it a presumption of ownership. ArkansasAirmotive Div. of Currey Aerial Sprayers v. Arkansas Aviation Sales,232 Ark. 354, 335 S.W.2d 813 (1960).
What process is due in such a case? In general, due process forbids state-sanctioned deprivations of property without prior notice and an opportunity for a meaningful hearing at a meaningful time, generallyprior to the deprivation. United States v. James Daniel Good RealEstate, ___ U.S. ___, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993); Owings v.Economic and Medical Services, 302 Ark. 475, 790 S.W.2d 438 (1990). The hearing may be postponed until after the deprivation only in an extraordinary situation involving a valid, overriding state interest justifying the delay of the hearing until after the deprivation. UnitedStates v. James Daniel Good Real Estate, ___ U.S. ___, 114 S.Ct. 492,126 L.Ed.2d 490 (1993); Davis v. Schimmel, 252 Ark. 1201, 482 S.W.2d 785
(1972); Bright v. Gass, 38 Ark. App. 71, 831 S.W.2d 149 (1992). The United States Supreme Court has stated that whether a deprivation prior to a hearing is violative of due process depends upon three factors: the private interest at stake; the risk of an erroneous deprivation of the private interest in the absence of a hearing and the likely value of additional safeguards; and the government interest at stake, including the added burden of additional safeguards. Mathews v. Eldridge,424 U.S. 319 (1976). In my view, the private interest (a pawnbroker's right to possession of the property as against all the world except the rightful owner) appears to be substantial; the risk of an erroneous deprivation may be significant[4] and the provision of a predeprivation hearing is likely to prevent erroneous deprivations in many cases; and the governmental interest (which is, under your question, the immediate
return of the property to the rightful owner), although substantial, may be less than "compelling." Any additional burden to the government in providing a predeprivation hearing might well be outweighed by the protection of the significant private interest at stake.[5]
In my opinion, the answer to your second question is "no." Statutes enjoy a presumption of constitutionality, all doubts are resolved in favor of constitutionality, and a statute will be upheld when any constitutional construction is possible. Reed v. Glover, 319 Ark. 16, 889 S.W.2d 729
(1994). In my opinion, nothing in A.C.A. §§ 12-12-103, 18-27-202, or18-27-204 would necessarily result in an unreasonable seizure, a deprivation of property without due process, a taking of property for public use without just compensation, or a denial of equal protection.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
Enclosure
[1] It should be noted that there is no statutory authority for a seizure of the type contemplated by your first question. Arkansas Code Annotated § 18-27-202 requires a pawnbroker to return property to the owner thereof, upon the owner's request and the owner's execution of an appropriate affidavit. The statute does not purport to authorize law enforcement officers to seize property from a pawnbroker in order to return it to the owner although they are not expressly prohibited by the statute from assisting an owner in his attempt to recover his property.
[2] Your first question at least implies that the property is seizedfor the purpose of returning it to the rightful owner. In GG Jewelry,Inc. v. City of Oakland, 989 F.2d 1093 (9th Cir. 1993), the court held that a warrantless seizure from a pawnbroker, supported by probable cause to believe that the property was stolen and for investigatory purposes,
would not be unreasonable under the "plain view" doctrine of theFourth Amendment.
[3] For an in-depth discussion of the due process issue, see Nickles Adams, Pawnbrokers, Police, and Property Rights — A ProposedConstitutional Balance, 47 ARK. L. REV. 793 (1994).
[4] Although the police's matching of pawnbrokers' inventory records (see A.C.A. § 12-2-103) with stolen property reports is likely to be accurate in most cases, mistakes can be and probably are made, particularly where there is involved property having no serial number or where the rightful owner has no record of the serial number. It should also be noted that in certain instances the pawnbroker may acquire an interest superior to that of the "rightful" owner. See Superior IronWorks v. McMillan, 235 Ark. 207, 357 S.W.2d 524 (1962) (mentioning estoppel and limitations as defenses available to an innocent purchaser against the "owner"); Farm Bureau Mut. Ins. Co. v. Wright, 285 Ark. 228,686 S.W.2d 778 (1985) (subsequent innocent purchaser of grain prevailed over original owner who was paid with a check that ultimately was dishonored; see A.C.A. § 4-2-403(1)). At any rate, the procedural protections of the due process clause apply regardless of the ultimate outcome of the hearing. Fuentes v. Shevin, 407 U.S. 67 (1972).
[5] In Op. Att'y Gen. 94-079, I stated my opinion that a pawnbroker is afforded due process through the post-seizure procedures available under A.R.Cr.P. 15.2. The views stated therein are reaffirmed here. The requests that prompted the issuance of Op. Att'y Gen. 94-079 clearly implied that the seizure at issue there was for investigatory purposes. In United States v. James Daniel Good Real Estate, ___ U.S. ___,114 S.Ct. 492, 126 L.Ed.2d 490 (1993), the Court implied, at least, that the governmental interest at stake is significantly different, and surely less compelling, where the purpose of the seizure is "not to preserve evidence of wrongdoing, but to assert ownership and control over the property itself." Good Real Estate, 126 L.Ed.2d at 502. The distinction between the purposes for the seizures (for investigation in Op. Att'y Gen. 94-079 and to affect possession here) is a major reason for my conclusions that post-seizure proceedings are sufficient where there is a legitimate investigatory purpose for the seizure, but that there is a serious question of whether a predeprivation hearing is necessary where the purpose of the seizure is to return the property to its original owner.